J-S32045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.A., a Minor, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| APPEAL OF: M.A., Birth Mother, | : | |
| | : | |
| Appellant | : | No. 251 WDA 2015 |

Appeal from the Order entered on January 21, 2015
in the Court of Common Pleas of Allegheny County,
Orphans' Court  Division, No. CYS 277 of 2010

| | | |
|---|---|---|
| IN RE: L.A., a Minor, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| APPEAL OF: M.A., Birth Mother, | : | |
| | : | |
| Appellant | : | No. 252 WDA 2015 |

Appeal from the Order entered on January 21, 2015
in the Court of Common Pleas of Allegheny County,
Orphans' Court  Division, No. TPR 079 of 2014

BEFORE:  SHOGAN, OLSON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JUNE 03, 2015**

M.A. ("Mother") appeals the Order granting the Petitions filed by the Allegheny County Office of Children, Youth and Families ("CYF") to involuntarily terminate her parental rights to her son, K.A. (born 1/3/2003), and daughter, L.A. (born 2/16/1999) (collectively "Children"), pursuant to

section 2511(a)(2), (5), (8) and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b).[1]  We affirm

The trial court summarized the relevant factual and procedural history of this case in its Opinion.  *See* Trial Court Opinion, 3/13/15, at 1-4.  We adopt the trial court's recitation for purposes of this appeal.  *See id*.

On appeal, Mother raises the following question for our review:

> Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving[,] by clear and convincing evidence[,] that [the] termination of Mother's parental rights would best serve the needs and the welfare of the [C]hildren pursuant to 23 Pa.C.S.A. § 2511(b)?

Brief for Mother at 7.

Our standard of review is as follows:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights.  … [O]ur standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> …  [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings

---

[1] The trial court also terminated the parental rights of K.B. ("Father") and "Unknown Father."  Father did not appeal the termination of his parental rights to the Children.

- 2 -

regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826–27 (Pa. 2012) (citations omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. Pursuant to that section, the burden is on the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id*. (citation and quotation marks omitted).

Satisfaction of any one subsection of section 2511(a), along with consideration of section 2511(b), is sufficient for the involuntary termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, Mother does not contest that there is competent evidence in the record to support the termination of her parental rights to the Children under at least one subsection of 2511(a). *See* Mother's Brief at

13.  Rather, Mother challenges the trial court's decision to terminate her parental rights based upon section 2511(b), which states the following:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

Regarding section 2511(b), the court inquires whether the termination of Mother's parental rights would best serve the developmental, physical and emotional needs and welfare of the Children.  *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005).  "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child."  *Id*. at 1287 (citation omitted).  The trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond.  *Id*.; *see also In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (stating that "the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship."); *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008) (explaining that, in cases where there is no evidence of any bond between

the parent and child, it is reasonable to infer that no bond exists). Additionally, "the strength of emotional bond between a child and a potential adoptive parent is an important consideration in a 'best interests' analysis." *In re I.J.*, 972 A.2d 5, 13 (Pa. Super. 2009); *see also In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013) (stating that "courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents."). Moreover, trial courts are not required to use expert testimony when conducting a bonding analysis, and may utilize evaluations by social workers and caseworkers to show the bond between parents and their children. *In re Z.P.*, 994 A.2d at 1121. Finally, the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child under section 2511(b). *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

On appeal, Mother contends that the termination of her parental rights may permanently sever the loving relationship between her and L.A. Mother's Brief at 13. Mother points out that Dr. Neil Rosenblum, a licensed clinical psychologist, provided expert testimony that L.A. has a relationship with Mother, she loves Mother, and there is a bond between them. *Id*. at 13-14. Mother claims that there is still a relationship between her and K.A., even though she is not visiting him. *Id*. at 14. Mother asserts that her older daughter has indicated that K.A. misses Mother and wants Mother to come home. *Id*. Mother desires to have contact with the Children, so that

they can enjoy the benefit of her love and companionship. *Id*. Mother contends that the trial court's Orders should be reversed, as CYS failed to prove, by clear and convincing evidence, that the termination of her parental rights best serves the needs and welfare of the Children. *Id*. at 14-15.

In its Opinion, the trial court addressed Mother's claim, set forth the relevant law, and concluded that her claim lacks merit. *See* Trial Court Opinion, 3/13/15, at 5-11. We concur with the sound reasoning of the trial court and affirm on this basis. *See id*.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/3/2015

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

IN RE:

K.A., a minor,

L.A., a minor,

ORPHANS' COURT DIVISION

NO.: CYS - 277 of 2010

No. TPR 079 OF 2014

OPINION

BY:

Honorable Arnold Klein
440 Ross Street
Suite 5039
Pittsburgh, PA 15219

Copies to:

Alexandra Gruskos,Esq.
Allegheny County Office
of Children, Youth and
Families
445 Fort Pitt Boulevard
Suite 101
Pittsburgh, PA 15219

Cynthia Moore, Esquire
Kidsvoice
437 Grant Street
Frick Building, Suite 700
Pittsburgh, PA 15219

Raymond Sanchez, Esq.
Juvenile Court Project
1100 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

FILED
15 MAR 13 PM 3:58
DEPT. OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

23

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

**IN RE:**                          ORPHANS' COURT DIVISION

**K.A., a minor,**                  No. CYS 277 OF 2010

**L.A., a minor,**                  No. TPR 079 OF 2014

## Introduction

The Allegheny County Office of Children, Youth and Families ("CYF") filed a Petition to Terminate the Parental Rights of K.A. ("Father) and M.A. ("Mother") to their son, K.A., (age 12) and their daughter L.A., (age 16). The Court granted CYF's petitions and terminated the parental rights of Mother, Father and Unknown Father to both children on January 21, 2015. Father did not appear at trial. Mother did appear at trial and she has appealed this court's order upon the basis that the termination of her parental rights does not meet the needs and welfare of the children.

1

**Procedural History**

CYF opened its case for K.A. and L.A. in November 2008, as the result of a referral from Ohio's child welfare agency. The children came into the care of CYF on March 9, 2009. They were adjudicated dependent May 1, 2009 in Allegheny County, but their dependency actually dates back to October 30, 2008 when they were found to be dependent in Logan County, Ohio.

When CYF initiated contact with the children, they were living in Pittsburgh at the home of their nineteen years old sister and her paramour along with two other siblings[1]. In other words, all five children were living in the residence of an older sister. Mother was, at that time, still living in Ohio. Mother returned to Pittsburgh in December 2008.

In home services were provided through CYF beginning in February 2009. Services of various types continued throughout this case. K.A. was removed March 30, 2009 and never returned to mother's care. L.A. was in foster care from March 30, 2009 to July 2011. L.A. was returned to

---

[1]The children ranged in age at that time from 2 years to 12 or 13 years, excluding the older sister who was 19 years of age and who had a child of her own.

2

mother's care from July 13, 2011 to February 2013. During part of that time, mother and L.A. lived in Ohio. For at least part of that time, L.A. was involved with Ohio's child welfare agency because in January 2013 their agency came to Pennsylvania and took L.A. back to Ohio after she or she and mother had returned to the Pittsburgh area. L.A. returned to Pittsburgh in the summer of 2013 and CYF took her back into care on July 8, 2013.

CYF established a family service plan (FSP) in 2009 for mother. The court will not address it because it is not an issue in this appeal. It is sufficient to say for purposes of this appeal, which does not contest the Court's findings and conclusions regarding the Section 2511(a) factors, that mother failed to make reasonable progress on her FSP goals.

CYF's goal was changed from reunification to adoption for K.A. and L.A. on May 28, 2014. Termination of parental rights petitions were filed for both children on May 6, 2014. The trial was conducted on the TPR petitions on January 9, 2015, and the Court announced its adjudication with a detailed statement of the findings of fact and conclusions of law supporting its adjudication on January

3

21, 2015. Mother then filed a timely appeal. Her Concise Statement of Errors Complained of on Appeal pursuant to Pa.R. App.P. 1925(c) raised the following single issue:

> The trial court abused its discretion and/or erred as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S. §2511(b). Such termination immediately, permanently and unnecessarily deprives the child of the love, companionship and affection of her biological mother. It also jeopardizes her relationship with her siblings and extended family.

## STATEMENT OF FACTS

The court's findings of facts are set forth in the January 21, 2015 transcript, which is incorporated by reference.

## DISCUSSIONS

In addition to deciding whether grounds existed to terminate mother's parental rights under Section 2511(a)[2], the Court must also consider whether termination of parental rights meets the needs and welfare of the children, 23 Pa.C.S.A. 2511(b), Section 2511(b) provides in pertinent part:

---

[2] 23.Pa.C.S.A. §2511(a)

4

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.

The best interests of the child analysis under Section 2511(b) requires that,

> The court should also consider the importance of continuity of relationships to the child, because severing close parental ties is usually extremely painful. The court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *Most importantly, adequate consideration must be given to the needs and welfare of the child.*

*In re T.A.C.*, 2015 PA Super 31 (Feb. 11, 2015) quoting, *In re K.Z.S.*, 946 A.2d 753, 760 (Pa.Super.2008), (emphasis added).

K.A. has not been in his mother's care since he was seven years old. His mother's visits were less than once per week under supervision. Mother's last visit with K.A. was on December 10, 2012. All of mother's visits were suspended after February 2013 because they were having a detrimental affect on K.A., such as he was urinating on himself when he returned from the visits. K.A. is a child who has cognitive and developmental disabilities and he does

5

not readily form bonds with others. For all practical purposes K.A. has no bond with mother. Breaking what bond does exist with mother will have no detrimental effect on him.

K.A. is now placed with very capable foster parents. It is close to certain that K.A.'s current foster parents will adopt him. He calls them "mom and dad". They have decades of experience as foster parents of children with special needs, some of whom they have adopted. Foster mother works at Pressley Ridge, a school for children with special needs, and foster father is retired. They live in a large house with ample room for K.A. and the other children and adults who reside there. His foster family ensures that K.A. receives needed mental health services.

K.A. is coming out of his shell in his current foster home and interacting more with others and his behavior has improved since he was placed with this foster family. The foster parents have a large and close extended family that allows K.A. to interact with others. K.A. is enrolled is school in the Keystone Oaks School District, which has an autistic program. Foster parents are planning on K.A.

6

participating in activities, such as Special Olympics. They are also teaching him responsibilities and incorporating him into the family by having him do chores.

K.A. has developed a good relationship with his current pre-adoptive parents. He is doing well in his current foster home. His foster parents have skill and experience dealing with children with developmental impairments. K.A. has made marked improvement since coming into their home. Mother admitted that she did not understand K.A's problems, and she does not know what to do to help him. Removing K.A. from his current pre-adoptive foster home would be detrimental to him developmentally, emotionally and educationally. His current placement could not be improved upon. While he knows his mother, severing that relationship will not have a material detrimental affect on his development.

L.A. is a sixteen year old young woman who desires to be adopted by her current foster family and she has made remarkable progress in her adoptive home. During the time that L.A. was returned to mother, there were problems with truancy and getting L.A. enrolled in school following a

7

change of residence. L.A. was enrolled in a cyber school prior to July 2012. That type of school was not conducive to L.A.'s needs, and the court ordered mother to enroll L.A. in a traditional school in the Steel Valley School District, where mother was residing at the time, but that enrollment never happened. Mother then moved to McKeesport, but L.A. was not enrolled in that school district either. Mother enrolled L.A. in a cyber school after she moved to Ohio. L.A. did not do well educationally until her placement with her current foster family, after which she developed educationally as well as emotionally.

L.A.'s foster mother plans to adopt her. She previously adopted five other children, two of whom now successfully live on their own. L.A. is attending school regularly and getting good grades. L.A. plans to join the Marines after high school, then retire and join the FBI. She currently participates in Junior ROTC. L.A. is doing well, and she is very happy in her current foster home.

L.A. is a young woman with ambitions and goals for her life, and she possesses the drive and determination to fulfill them. She clearly sees that it is in her best

8

interest to remain with her foster mother. L.A. desires to be adopted by her foster mother and she has told her mother that she wants to be adopted. With the educational support L.A. now receives and the stable living environment provided by her foster mother, L.A. will continue to progress to be a productive adult. If the court were to deny the petition, L.A. would remain in foster care because returning her to her mother's care is an unacceptable option. However for the court to leave L.A. in foster care would conflict with the law's goal of achieving a final resolution of a child's status.

Dr. Rosenblum's testimony about L.A. is worth quoting, coming as it does from a witness who is not given to hyperbolic statements:

> In L.A.'s case, I mean, she does have a relationship with her mother. She loves her mother. But she is very definite in stating that she wants to get adopted. She has experienced some criticism from her family, sisters, mother, about her decision, but I have found her to be resolute and very clear thinking about her reasons for wanting a goal of adoption.
> And I have to editorialize and say that L.A. is one of the brightest examples of progress and improvement in her personal adjustment and in her goals and her aspirations as any child I've seen in the dependency system in 30 years. She just

9

has blossomed into a young lady who's going to make her mark in life.

And I have personally witnessed just enormous progress with this young lady. She's a shining example of what happens to a child if she gets the right – they get the right attention and emotional support.

So I believe that this is a very important step for L.A. and something that she understandably aspires to as being important for herself.

## CONCLUSION

Mother's thought process is immature. Mother believes that because she gave birth to these children and she loves them and they may love her, nothing else is important. Even after five years, Mother clings to this immature belief despite considerable, but unsuccessful, efforts by CYF and others to help her correct the behaviors that required her children to be taken into the care of others. Even her children realize that being in her care is not in their best interests. Both children, for entirely rational reasons, want to be adopted by their current foster parents who are able to provide them with educational, emotional, developmental and protective care they need and deserve.

10

The evidence could not be more certain that termination of mother's parental rights to K.A. and L.A. best serves the needs and welfare of these children.

BY THE COURT:

Arnold I. Klein

11